HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

MARVIN GLENN HOLLIS,

    Plaintiff,

    v.

G. BRACKETT, et al.,

    Defendants.

CASE NO. C08-1091RAJ

ORDER ON MOTIONS

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 36), Plaintiff's motion for an extension of time to respond to that motion (Dkt. # 49), Plaintiff's motion to strike (Dkt. # 54), and Plaintiff's motion to appoint counsel (Dkt. # 61). For the reasons stated below, the court GRANTS Defendants' motion for summary judgment in part and DENIES it in part. The court GRANTS Plaintiff's motion for extension of time, but DENIES his other motions.

At the conclusion of this order, the court imposes deadlines for the preparation of a pretrial statement in accordance with Local Rules E.D. Cal. ("LR") 281.

## II. BACKGROUND

Staff at High Desert State Prison conducted a search of the cells of prisoners in "Facility C" on November 8, 2007. Officer J. Neves seized the mattresses from every cell, marked them with an identification number, and transported them en masse to a

ORDER – 1

separate building to x-ray them.  Among the mattresses he seized were one belonging to Plaintiff Marvin Glenn Hollis and one belonging to his cellmate.

Officer G. Brackett, who had no role in the seizure of the mattresses or the decision to seize them, manned the x-ray machine.  A conveyor belt fed the machine.  Officer Neves was responsible for placing the mattresses he seized on the conveyor belt.  The evidence does not reflect whether Officer Neves remained in the x-ray room after delivering the mattresses.  A jury could conclude that he left the room before Officer Brackett began x-raying the mattresses, or, at a minimum, that he left the room before the events critical to this lawsuit occurred.

According to Officer Brackett, he discovered what appeared to be a weapon in the x-ray of one mattress.  That mattress was marked C6-127L, which corresponded to Facility C, Building 6, Cell 127, and the lower-level bunk.  Officer Brackett opened the mattress at what appeared to him to be a re-stitched corner.  Inside, he found a handmade plastic weapon about six inches long.  He contacted Building 6.  Staff there informed him that Mr. Hollis and his cellmate resided in the cell designated on the mattress.  Officer Brackett summoned the prison's investigative services unit.  Officer D. Dittman of that unit arrived and took custody of the mattress and the weapon.  According to Officer Brackett's report, about ten minutes passed between the time he identified the object by x-ray and the arrival of Officer Dittman.

According to Mr. Hollis, Officer Brackett planted the weapon in the mattress.  Officer Brackett knew Mr. Hollis's cell number because he had escorted Mr. Hollis to that cell only two days earlier, on November 6, 2007.  During that encounter, Mr. Hollis threatened to file a grievance against Officer Brackett for his alleged use of excessive force.  For that reason, Mr. Hollis alleges that when Officer Brackett saw the mattress

ORDER – 2

with labelling indicating it came from his cell, he planted the weapon to retaliate against Mr. Hollis for threatening him with a grievance.[1]

Officer Dittman conducted an investigation shortly after Officer Brackett reported the weapon. He interviewed Mr. Hollis and his cellmate separately. The cellmate claimed that he had not placed the weapon in the mattress. He also claimed that he had inspected the mattress twice while making his bed, and found no alterations. He testified that he was receiving medical treatment on the morning of November 8, and that Mr. Hollis was therefore alone in their cell for a few hours before the mattress seizure occurred. When Officer Dittman interviewed Mr. Hollis, he began by saying that a weapon had been discovered in his cell. According to Officer Dittman, Mr. Hollis responded by saying "you didn't find it in my mattress." At that point, no one had revealed to Mr. Hollis that the weapon had been found in a mattress.

Prison officials charged Mr. Hollis with a violation of prison rules, and also referred the matter to local authorities for criminal prosecution. He was placed in administrative segregation on November 8, and remained there until the prison convened a disciplinary hearing on December 11.

Officer D. Griffith presided at the disciplinary hearing. There is neither evidence nor allegation that he had any part in the seizure of the mattresses or the investigation of the weapon found therein. Officer Griffith issued a report memorializing the disciplinary hearing and his decision. He determined that Mr. Hollis was responsible for the weapon in the mattress. He cited Officer Dittman's written statement summarizing his interview with Mr. Hollis's cellmate, who said that he was certain that his mattress was unaltered when he left the cell on the morning of November 8, and that Mr. Hollis had been in the cell alone after he left. Officer Griffith also cited Mr. Hollis's statements at his interview with Officer Dittman, in which he had revealed knowledge that the weapon was inside a

---

[1] Mr. Hollis made good on his threat, filing a grievance arising out of his November 6 encounter with Officer Brackett. There is no evidence that Officer Brackett knew about the grievance by the time he reported the weapon inside the mattress.

ORDER – 3

mattress before Officer Dittman revealed that information.  Finally, Officer Griffith noted that Mr. Hollis spontaneously stated that he was guilty during the disciplinary hearing.

Officer Griffith relied entirely on written statements from witnesses to reach his guilty finding.  Officer Griffith noted that Mr. Hollis had requested the testimony of several witnesses at the disciplinary hearing, including his cellmate and all of the officers who were involved in the seizure of the mattresses and the subsequent investigation.  Only Officer Brackett was required to appear at the hearing.  Mr. Hollis did not ask Officer Brackett any questions.  Officer Griffith denied Mr. Hollis's request for the appearance of other witnesses.

At the conclusion of the hearing, Officer Griffith ruled that Mr. Hollis had concealed the weapon.  He penalized him with the loss of 360 days of good-time credit, 10 days without yard privileges, and 90 days without canteen privileges.

Mr. Hollis administratively appealed the disciplinary finding.  On January 28, 2007, prison officials ordered a rehearing because Officer Griffith had not sufficiently documented the reason that Mr. Hollis was denied the right to call witnesses.  At a March 7, 2008 rehearing, the presiding officer found insufficient evidence to support the charge against Mr. Hollis.

Mr. Hollis remained in administrative segregation from his initial placement there on November 8, 2007 until March 27, 2008.

Mr. Hollis raises two claims, invoking 42 U.S.C. § 1983.  First, he contends that Officer Brackett fabricated the evidence against him.  He did so, Mr. Hollis contends, in retaliation for Mr. Hollis's threat to file a grievance against him.  Second, he contends that Officer Griffith denied him due process by denying him the right to call his own witnesses and the witnesses who had provided statements against him.  Defendants seek summary judgment against both claims.

ORDER – 4

## III.   ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

### A.   Disputed Issues of Material Fact Prevent the Court from Entering Judgment on Mr. Hollis's Retaliation Claim Against Officer Brackett.

Mr. Hollis has sufficient evidence at this stage as to several aspects of his retaliation claim. A prisoner seeking to prove retaliation must show that he engaged in protected conduct and that the defendant took an adverse action against him because of his protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). He must also show that the retaliatory action chilled the exercise of his First Amendment rights, and that it did not advance a "legitimate correctional goal." *Id.* at 567-68. There is evidence from which a jury could conclude that Mr. Hollis threatened Officer Brackett with a grievance on November 6, 2007. There is no dispute that filing a grievance (or threatening to do so) is protected conduct. Assuming that Officer Brackett planted the weapon, there is no question that it was an adverse action that chilled the exercise of Mr. Hollis's First Amendment rights, and that it did not advance any legitimate correctional goal.

ORDER – 5

The key dispute is whether Officer Brackett actually planted the weapon in the mattress. If a jury could conclude that he did so, a jury could certainly conclude that he did so because he wished to retaliate against Mr. Hollis. The evidence that Officer Brackett planted the weapon is circumstantial. Mr. Hollis concedes that he has no direct evidence that Officer Brackett put the weapon in the mattress. Officer Brackett denies that he did, and no witness has provided evidence to the contrary. Mr. Hollis was not present in the x-ray room. Indeed, it is not clear whether anyone other than Officer Brackett was present in the x-ray room when he discovered the weapon.

The circumstantial evidence permits the conclusion that Officer Bracket planted the weapon. When resolving a summary judgment motion, a court cannot consider the credibility of witnesses. Accordingly, the court is compelled to conclude that a jury could believe Mr. Hollis's statement that he did not put a weapon in the mattress. A jury could also believe his cellmate's statement that not only did he not put a weapon in the mattress, but that he had inspected the mattress prior to its seizure and found it unaltered. A jury that believed this evidence would conclude that there was no weapon in the mattress when Officer Neves seized it. That conclusion would in turn permit the jury to conclude that Officer Brackett planted that weapon. A jury could conclude that Mr. Hollis's threat to file a grievance two days earlier gave Officer Brackett a motive to retaliate. A jury could conclude that Officer Brackett knew that the numbers on the mattress identified Mr. Hollis's cell, because he had escorted Mr. Hollis to his cell two days earlier. A jury could also conclude that Officer Brackett was alone in the x-ray room with the mattress during the time he discovered the weapon.

The court in no way suggests that it is likely that a jury would conclude that Officer Brackett planted the weapon. Indeed, to do so, a jury would not only have to reach the conclusions listed above, it would also have to conclude that in the few minutes that Officer Brackett was alone with the mattress, he cut a hole, hid the weapon, stitched up the hole and then opened it again before calling other staff to notify them of his

ORDER – 6

1  discovery.  That these conclusions are unlikely, however, is no basis for the court to grant
2  summary judgment.
3        It is not clear whether Mr. Hollis has raised a retaliation claim against Officer
4  Griffith.  He several times contends that Officer Griffith found him guilty because he
5  wished to support Officer Brackett.  He alleges that Officer Griffith exchanged a "high
6  five" with Officer Brackett at the conclusion of the hearing and told Mr. Hollis that he
7  was teaching him a lesson about threatening officers with grievances.  Despite these
8  allegations, Mr. Hollis also stated twice at his deposition that he had no basis to accuse
9  Officer Griffith of retaliation.  Carroll Decl. (Dkt. # 36-3), Ex. A (Hollis Depo. at 44, 47).
10       Assuming that Mr. Hollis is pursuing a retaliation claim against Officer Griffith,
11 that claim fails as a matter of law.  An officer presiding at a disciplinary hearing cannot
12 be liable for retaliation so long as there is "some evidence" to support his decision.  *Hines*
13 *v. Gomez*, 108 F.3d 265, 269-70 & n.3 (9th Cir. 1997).  The court finds that, as a matter
14 of law, there was "some evidence" to support Officer Griffith's decision.  The evidence
15 regarding Officer Dittman's November 8, 2007 interview of Mr. Hollis satisfies the
16 "some evidence" standard.

17 **B.     Mr. Hollis Cannot Prevail On A Due Process Claim Against Officer Brackett.**

18       Mr. Hollis was entitled to due process in his December 11, 2007 disciplinary
19 hearing.  Not every prison disciplinary hearing gives rise to due process rights.  In *Sandin*
20 *v. Conner*, 515 U.S. 472, 483 (1995), the Supreme Court held that the Fourteenth
21 Amendment's Due Process Clause protects a prisoner only where a disciplinary hearing
22 would lengthen his sentence or "impose[] significant hardships on the inmate in relation
23 to the ordinary incidents of prison life."  For that reason, the parties focus much of their
24 attention on whether Mr. Hollis's confinement in administrative segregation from
25 November 8, 2007 to March 27, 2008 imposed the "significant hardships" that *Sandin*
26 requires.

27
28  ORDER – 7

The court questions whether the *Sandin* inquiry is relevant here.  When Mr. Hollis appeared for his hearing on December 11, he was facing a serious charge for which he faced loss of good-time credits as a penalty.  It has been settled for more than 30 years that the Due Process clause applies to such hearings.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).  Among other procedural rights, a prisoner facing a loss of good-time credit is entitled to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Id.* at 566.  Ultimately, Mr. Hollis lost no good-time credits, because the sanction that Officer Griffith imposed, which included the loss of 360 days of credit, was set aside when the prison ordered a new hearing.  But there is no question that Mr. Hollis faced the prospect of losing good-time credits, thereby lengthening his incarceration.  In a different case, the court might be required to address whether that prospect alone is dispositive as to whether the Due Process Clause protected Mr. Hollis at the hearing.

The court need not decide that question today because Mr. Hollis has offered no proof that Officer Griffith's actions resulted in any sanction.  It is not enough to prove a constitutional violation, a prisoner must also prove that the violation resulted in some injury.  *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) ("In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury.").  Mr. Hollis seems to believe that Officer Griffith is responsible for his placement in administrative segregation, but he has provided no evidence to support that belief.  Mr. Hollis was placed in administrative segregation immediately following the discovery of the weapon on November 8.  There is no evidence as to why this occurred, and the court assumes for the purposes of this order that it is prison policy to segregate those charged with serious disciplinary offenses.  In any event, there is no evidence at all that Officer Griffith was responsible for that decision. Officer Griffith first encountered Mr. Hollis at the December 11 hearing.  After that, he issued several disciplinary

ORDER – 8

1 sanctions, but there is no evidence that those sanctions included placement in
2 administrative segregation.  On January 28, 2008, the prison appeals board issued an
3 order directing that Mr. Hollis receive a new hearing.  Nonetheless, he remained in
4 administrative segregation.  Again, there is no evidence that Officer Griffith was
5 responsible for this.  It appears again that it was prison policy to keep those charged with
6 serious disciplinary violations confined in administrative segregation.  Even after he was
7 found not guilty of the charges on March 7, 2008, he was kept in administrative
8 segregation for an additional 20 days.  Again, there is no evidence that Officer Griffith
9 was responsible for his continued placement in administrative segregation.

10       On this record, no jury could conclude that Officer Griffith was responsible for
11 Mr. Hollis's confinement in administrative segregation.  Perhaps more to the point, there
12 is no evidence that Mr. Hollis was placed in administrative segregation because Officer
13 Griffith denied him the right to present witness testimony and to confront the witnesses
14 against him.  Instead, the record mandates the conclusion that Mr. Hollis was in
15 administrative segregation because officials believed he had possessed a weapon.  There
16 is no evidence that Officer Griffith's decision to deny Mr. Hollis the right to call
17 witnesses was the cause of their belief.  Because no evidence permits the conclusion that
18 Officer Griffith caused Mr. Hollis to remain in administrative segregation, Mr. Hollis's
19 Due Process fails as a matter of law.

20 **C.     Mr. Hollis's Motions**

21       Mr. Hollis brought three motions of his own, as well as a variety of requests and
22 objections.

23       First, after the court had already granted an extension of time for Mr. Hollis to
24 respond to the summary judgment motion, Mr. Hollis moved for another extension of
25 time.  The court is troubled by evidence that Mr. Hollis's untimely opposition was the
26 result of his refusal to cooperate with prison staff in obtaining copies of his opposition
27 papers.  Nonetheless, the court strongly prefers to resolve motions on their merits, and
28 ORDER – 9

1  accordingly accepts Mr. Hollis's late opposition, thereby granting his second motion for
2  an extension of time.

3        Next, Mr. Hollis moved to strike Defendants' reply brief.  For the most part, that
4  motion only raises arguments on the merits of Defendants' arguments in that brief.  The
5  court has considered those arguments, but they give the court no reason to strike the brief.
6  Mr. Hollis also argues that the "perjurious declarations" of Officers Brackett and Griffith
7  were improper because their counsel originally submitted their declarations with
8  electronic signatures but without a notation that counsel was in possession of their
9  original signatures.  LR 131(f).  Defendants' counsel admitted to inadvertently violating
10 the rule, and resubmitted the declarations soon after Mr. Hollis identified the error.  The
11 court finds no basis for striking the declarations.  The court also finds no basis to strike
12 the brief to the extent it relies on the transcript of Mr. Hollis's deposition.  Mr. Hollis
13 argues that he was not given an opportunity to correct the transcript.  He does not,
14 however, point to any specific testimony that he would have corrected.  Finally, Mr.
15 Hollis raises a host of objections to Plaintiff's responses to his discovery.  The deadline
16 for filing discovery motions was March 31, 2010.  Nov. 10, 2009 order (Dkt. # 23).  Mr.
17 Hollis cannot present his belated discovery objections in the context of a motion to strike.
18 The court thus denies the motion to strike.

19       On February 9, long after the parties had completed briefing on these motions, Mr.
20 Hollis filed a motion for appointment of counsel.  In that motion, he contends that he
21 lacks the education and experience to prepare this case for trial.  His participation in this
22 case so far, however, proves otherwise.  The court finds that Mr. Hollis is able to
23 competently represent himself.  The other allegation in the motion is that Mr. Hollis has
24 been placed in a "mental health crisis unit and involuntarily medicated with potent
25 psychotropic medicine."  Mr. Hollis provides no evidence to support that allegation.  If
26 he wishes to stay this case while he addresses his mental health issues, he may request a

28 ORDER – 10

1 stay, but only if he provides specific evidence regarding his mental health status. For now, the court denies his motion for appointment of counsel.

Finally, the court notes that Mr. Hollis has made numerous requests for "judicial notice." In every case, he requests judicial notice of a reported court case. The court has considered those cases, and declines to address Mr. Hollis's requests in greater detail. In the future, if Mr. Hollis wishes to call the court's attention to a reported case, he need only file a "Notice of Additional Authority." The court notes, however, that it is under no obligation to consider such notices to the extent they cite authority that Mr. Hollis could have brought to the court's attention in conjunction with his original pleading.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment. Dkt. # 36. The court directs the clerk to dismiss Officer D. Griffith as a Defendant. The court GRANTS Mr. Hollis's motion for an extension of time (Dkt. # 49), and has considered Mr. Hollis's belated summary judgment opposition. The court DENIES Mr. Hollis's motion to strike. Dkt. # 54. The court DENIES Mr. Hollis's motion for appointment of counsel. Dkt. # 61.

Mr. Hollis has already indicated that he would like to participate in a settlement conference. Dkt. # 60. Defendants stated that they did not wish to consider settlement until the court has ruled on their summary judgment motion. Dkt. # 60 (attaching Oct. 18, 2010 letter from Defendants' counsel). The court has made that ruling today, but there is no indication that a settlement conference would be productive. The parties are free to discuss settlement, and may jointly request a settlement conference if they prefer. At this time, however, the court declines to order a settlement conference

In the interim, the parties must begin to prepare this case for trial. The court will hold a telephonic pretrial conference on May 24, 2011 at 3:00 p.m. Court staff will coordinate with the parties and with prison staff regarding participation in the telephonic conference. In preparation for that conference, Mr. Hollis must provide Officer Brackett

ORDER – 11

with his initial pretrial statement in accordance with LR 281(a)(1) no later than April 22, 2011. In addition to the requirements of LR 281, Mr. Hollis shall follow the court's November 10, 2009 order (Dkt. # 23) regarding requests for the testimony of incarcerated and unincarcerated witnesses. Officer Brackett shall provide his LR 281 statement to Mr. Hollis no later than May 2, 2011. The parties shall meet and confer no later than May 10 regarding any disputes. Officer Brackett shall be responsible for submitting a joint statement in accordance with LR 281(a)(2) no later than May 18, 2011.

The court emphasizes that the deadlines set in this order are firm. Any party who fails to meet these deadlines may be subject to sanctions, including the dismissal of claims or defenses.

The court will set a trial date during the pretrial conference.

DATED this 22nd day of March, 2011.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12